UNITED STATES DISTRICT COURT

FOR THE

DISTRICT OF MARYLAND

UNITED STATES OF AMERICA

V.

Criminal No: 09-cr-0611

RYAN HOLNESS

PETITIONER

MOTION FOR REDUCTION OF SENTENCE/
COMPASSIONATE RELEASE PURSUANT TO 18
U.S.C. Section 3582 and Section 3624(c)(2),
THE FIRST STEP ACT AND THE CARES ACT

Now comes, the Petitioner Ryan Holness, pro se with his motion requesting compassionate release due to the Covid-19 pandemic.

STATEMENTS OF FACTS

On March 11, 2020, the World Health Organization declared a global pandemic due to the severe acute respiratory syndrome corona virus (covid-19), which causes the very contagious infectious disease covid-19. This virus (covid-19) has paralyzed the entire world. The virus has spread very rapidly, shutting down schools, places of

work, places of worship, sports and every day life as we know it. United States v. Rodriguez, No. 2:03-cr-00271-AB-1, 2020 WL 1627331, (E.D. Pa. Apr. 1, 2020). In the United States, "the Covid-19 pandemic is extraordinary and unprecedented in modern times." United States v. Hernandez, No. 18 cr 834-04 (PAE), 2020 WL 1684062, at 3 (S.D.N.Y. Apr 2. 2020) The United States has the highest number of known Covid-19 cases in the world and the number of cases, and deaths are growing exponentially. According to CNN as of August 15, 2020, over 170,000 people have died from the virus, and the infection rate is growing by the day.

Covid-19 is a highly contagious disease caused by a "novel coronavirus" that spreads primary through person to person contact. The virus can remain viable in the air for up to three (3) hours, and on plastic and metal surfaces for up to seventy two (72) hours. Although most people experience relatively mild symptoms, such as fever, cough and shortness breath, "the effects of Covid-19 can be drastically more severe in older individuals and those with underlying medical conditions," Thakker v. Doll, No. 1:20-cv-480, 2020 WL 1671563, at *4 (M.D. Pa. Mar. 31, 2020). Such as the Petitioner In some cases, Covid-19 can cause serious, potentially permanent damage to lung, spleen, and kidney, that may require extensive use of a ventilator and hospitalization. These long term serious conditions causes the likelihood of fatality to increase drastically.

"While the Covid-19 pandemic is devastating in every region it invades, prison populations are subject to heightened

2 of 10

vulnerability." Samy v. United States, No. CR-20610-1, 2020 WL 1888842, at *4 (E.D. Mich. Apr. 16, 2020). "The Covid-19 pandemic presents an extraordinary and unprecedented threat to incarcerated individuals who are not free to take protective measures recommended by public health experts, such as frequent handwashing and maintaining six feet from others. Social distancing which is crucial part of containing the spread of Covid-19 "is" almost impossible in the congregate setting, of prisons. Where large numbers of inmates are held together in crowded, closed facilities, and prison staff circulate in and out everyday - carrying the virus into the prison from their surrounding community. Banks v. Booth, No. CV 20-549 (CKK), 2020 WL 1914896, at *7 (D.D.C. Apr. 19, 2020); United States v. Williams, No. 3 04 CR/MCR, 2020 WL 1751545, at *2 (N.D. Fla. Apr. 1, 2020). See also CDC, Interim Guidance on Management of Coronavirus Disease 2019, (Covid-19). In correctional and detention facilities, "daily staff ingress and egress presents many opportunities for Covid-19 to be introduced into prisons and congregate environments. In which prisoners such as the petitioner, live, work, eat, study, worship and recreate. Heighten by the potential by poorly ventilated facilities, such as F.C.I. Allenwood, which lacks the medical staff and equipment needed to monitor and treat large numbers of infected patients. If the petitioner was to contract the virus (Covid-19) and develop severe complications, he may not receive timely treatment, making it unlikely that the petitioner would recover and survive with his pre-existing conditions.

Many Federal Bereau of Prisons facilities have no ventilator(s) that is necessary to fight Covid-19, let alone the numbers needed in a pandemic. According to a Report from the Department of Justice, 17% of medical positions in Prison Hospitals were vacant and many BOP facilities were so under staffed that they were at "Crisis Level." See HTTPS://OIG.Justice.Gov/Reports/2016.

Despite the BOP's action plan to combat the spread of Covid-19. Including confining all inmates in their assigned cells twenty-two hours per day. That question has been answered, as new outbreaks has been Reported in BOP Prisons. Rodriguez 2020 WL 1627331, at *1. It has been documented that well over 7,000 BOP inmates and over 700 BOP staff have tested Positive for Covid-19, and ___ inmates have died. Given the lack of testing and the under Reporting of the actual numbers of infection already in BOP facilities.

On April 24 the BOP Reported that it was expanding it's testing Primarily on "testing newly Symptomatic cases to confirm the diagnosis" the Results of little testing that has been done are astonishing: Recent BOP data shows that out of 32,194 test given throughout the system, over 29 percent have come positive. Strongly Suggesting there are allot more Covid-19 cases left uncovered. The BOP has a 5.5 percent higher Positivity Rate Per Capita than the entire United States.

## COVID-19 is an Extraordinary and Compelling Reason to Release the Petitioner

"Courts around the country have recognized that the risk of COVID-19 to people held in jails and prison is significantly higher than in the community, both in terms of risk and transmission, exposure and harm to individuals who become infected." See Williams, 2020 WL 1751545, at *2; see also Banks, 2020 WL 1914890, at 4. Once a case of COVID-19 is identified in a facility, it will likely be too late to prevent a widespread outbreak. The risk of COVID-19 in prisons is a matter of days, not weeks and each day, perhaps each hour that passes threatens incarcerated persons with a greater risk of fatality. See United States v. Atkinson, No. 2:19-cr-55 JCM (CWH) 2020 WL 1904585, at *2. Also the courts have found "extraordinary and compelling reasons" for compassionate release of a 28 year old suffering from an unspecified medical complication. See United States v. Perez, No. 17CR513-3 (AT), 2020 WL 1546422, at * (SDNY April 2020). Also courts have found "extraordinary and compelling reasons" exist under Section 3582(c)(1)(A)(i) by an "independent assessment," because U.S.S.G § 1B1.13 is no longer a "reliable policy statement," after the First Step Act. United States v. Rodriguez, No. 2:03-CR-271, 2020 WL 1627331 at *4 (E.D. Pa. April 1, 2020); United States v. Cantu, No. 1:15-cr-458-1, 2019 WL 2498923, at *4 (S.D. Tex. June 17, 2019). The Act's change to the procedure for seeking compassionate release (who may file a motion) also changes the detail substance standard (when a motion may be granted) set forth by Congress, the Sentencing Commission, and the FBOP.

Section 1B1.13 reference to a "motion of the defendant" brings rise to this analysis. Courts have found a defendants generalized

risk of contracting Covid-19 to be an extraordinary and compelling raised under subdivision (D) of Application Note one (1), stating courts may excercise the authority that subdivision (D) delegates the FBOP. See United States v. Resnick, No 14 CR 810, 2020 WL 1651105 at *7 (S.D.N.Y. Apr. 2, 2020); United States v. Jepsen, No. 3:19-cv-73, 2020 WL 1640232, at *4 (D. Conn. Apr 1, 2020). The vast majority of district courts, that have considered the issue, also have interpreted the federal compassionate release statue to authorize a sentence reduction for "extraordinary and compelling reasons" other than those enumerated in Application Note one (1). See United States v. Almontes, No. 3:05-cr-58 (SRY) 2020 WL 1812713; United States v. Maumau, No. 2:08-cr-00758-TC-H 2020 WL 806121, at *2 (D. Utah Feb. 18 2020); see also United States v. Beck, 425 F.Supp.3d 573 (M.D. N.C. 2019); United States v. Urkevick, No 8:03-cr-37, 2019 WL 6037391, at *3 (D. Neb Nov. 17 2019)

## EIGHTH AMENDMENT VIOLATION FOR CRUEL AND UNUSUAL PUNISHMENT

Continued confinement during the potential exposure to Covid-19 constitutes an unconstitutional punishment, and thus a violation of the Petitioner's 8th amendment right to be free of cruel and unusual punishment. The Supreme Court ruled, the potential, even though not yet suffered of harm, posed an unreasonable risk of serious damage to one's future health. See Helling v. McKinney, 509 US. 25, 28. 113 S. Ct. 2475, 125 L.Ed. 2D 22 (1993) Multiple F.C.I Allenwood employees have been made to take leaves of absences due to a need for

them to quarantine because of their exposure to COVID-19. A few of these same employees have been in the same space with the Petitioner without proper P.P.E, and with no contact tracing being done. The prison seem to have no testing implemented for staff or inmates, even as at least three (3) inmates have died at FCI Allenwood and none were tested for COVID-19. The Petitioner is placed in a position of extreme vulnerability of severe medical complications or even certain death as a result of contracting COVID-19 with medical issues that the Petitioner is from pre-existing conditions.

## THE PETITIONER IS NOT A DANGER TO SOCIETY AND POSES NO THREAT TO PUBLIC SAFETY

The Petitioner has exhibited outstanding behavior during his time of incarceration in the BOP, and has no record of infractions. The Petitioner has been a mentor to his fellow inmates since he has been committed to the BOP. His rehabilitation has been constant and on going. In considering the Court may apply these steps the defendant his taken to better himself and others around him. See Pepper v. United States, 562 U.S 476, 490, 131 S.Ct. 1229, 179 L.Ed 2d. 196 (2011) (permitting consideration of a defendant's rehabilitation since his prior sentencing and holding that such evidence of a defendant may support a downward variance from the advisory guideline range when a defendant's case is up for resentencing). Even though the Petitioner was convicted of a crime of violence and he regrets not cooperating with law

enforcement, significantly the petitioner has never been involved in any violent incidents during his time of incarceration. The petitioner has at least two (2) serious underlying pre-existing conditions and is presently taking prescription medication.

The petitioner suffers from high cholesterol and is on a daily medication as of such. Also he suffers from a weakened immune system which causes him to be more susceptible to any air or surface borne allergens and viruses such as the Covid-19. This heightened anxiety has been causing the petitioner serious mental health problems. The corona virus (Covid-19) has been documented to cause great damage to it's victims organs and blood vessels so grave that they often die from these complications or permanent damage to these organs, which the petitioner knows could be fatal to him because he was born with the sickle cell trait/G6PD. This pre-existing condition already affects him on a daily basis and it is this condition that causes or puts him at a greater risk of fatality were he to contract the Covid-19 virus. See CDC Report. This compromised immune system renders him and other inmates at a very high risk during this pandemic, and without the proper medical equipment or staff at F.C.I. Allenwood will almost cause certain death or injuries to the petitioner. See United States v. Van Dyke U.S. Dist. Lexis 62016 (Apr 3, 2020)

If granted release, the petitioner would be on supervised release for a number of years lowering any chance of recidivism. Furthermore, GPS monitoring has been shown to lower the recidivism rate by 31%. Furthermore the petitioner has the

family support and plan in place that he will quarantine in place at his family home, were he to released. A plan that call for him to be picked by car and taken straight to his family home minimizing his chance of interaction with the public and contracting Covid-19.

## CONCLUSION

The petitioner is highly unlikely to reoffend or pose any threat to the community. He also express his remorse and regrets for his pass actions in life. Since then the petitioner has been actively participating in programs and seeking positive change in prison. Since his conviction and sentence, he has gained great pro social skills and positive energy. He is also ready to be a productive member of society. He has a very strong connection with his family and friends who are ready willing to help and assist him getting a job in the food service or the janitorial field. The petitioner plans to live with his mother and sister in Brookly N.Y. if the Honorable Judge give him the opportunity. He also is very greatfull to the court for the opportunity to address the court for the chance of not dying in prison of this very serious virus Covid-19.

CERTIFICATE OF SERVICE

I, Ryan Holness, hereby certify that the foregoing is a truly served copy. It must be deemed filed at the time delivered to prison authorities for forwarding to the court. Houston v. Lack, 101 L.ed 2d 245 (1988), upon the court and parties to litigation and for his attornies of record; by placing the same in a sealed postage paid envelope addressed to the assistant United States Attorney's following address:

John F. Purcell Jr.
36 S. Charles Street
Fourth Floor
Baltimore, Md 21201

Executed on this 17th day August 2020

*Ryan Holness*
Signature of Petitioner

Ryan Holness,
Name of Petitioner