**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**

**UNITED STATES OF AMERICA** *

**v.** * **Criminal No.: ELH-09-0611**

**RYAN HOLNESS,** *

**Petitioner.** *

**...oOo...**

**GOVERNMENT'S RESPONSE TO PRO-SE MOTION FOR COMPASSIONATE RELEASE PURSUANT TO 18 U.S.C. § 3582(c)(1)(A)(i)**

The United States of America, by undersigned counsel, hereby responds to Petitioner's Motion for Compassionate Release under 18 U.S.C. § 3582(c)(1)(A)(i). ECF 160. Holness is a forty-year old murderer who has no serious medical issues. Petitioner has not established extraordinary and compelling reasons for compassionate release and the government further opposes the request on the basis of the factors set forth at 18 U.S.C. § 3553(a), as Petitioner remains a danger to the community.

**BACKGROUND**

Petitioner was convicted on March 28, 2011 of three counts contained in a Second Superseding Indictment. ECF 86. The lead count alleged Interstate Travel to Commit Domestic Violence, Resulting in Death, pursuant to 18 U.S.C. Section 2261(a)(1). He was sentenced by Judge Nickerson on June 9, 2011 to life imprisonment. ECF 103. His convictions and sentence were affirmed on appeal. ECF 121.

The following Facts were established at trial:

The facts in this case are striking. Defendant Holness lived in Lexington Park, Maryland and worked for the United States Navy. He had his wife, Serika Dunkley Holness (hereinafter, "Serika"), live in Brooklyn, New York with his mother and brother. During his marriage,

Holness had several girlfriends in Maryland, Virginia, and New York. A few months before Serika's murder, Holness obtained a $1 million life insurance policy on his wife. Holness was the sole beneficiary on that policy. Holness devised a scheme to bring his wife from New York to Maryland for the murder. On June 4, 2009, late at night, Holness and Serika traveled together from Brooklyn, New York to Maryland. Serika was found murdered, stabbed multiple times in Crumpton, Maryland, during the early morning hours of June 5, 2009.

Holness told the police an elaborate tale to disguise his participation in the murder. After signing a written Miranda waiver form, Holness told police that on June 4, 2009, at approximately 9:00 PM, he and Serika left Brooklyn heading towards his residence in Lexington Park, Maryland. Holness claimed that he needed Serika to come sign their lease at his Maryland apartment. Serika did not live with Holness in Maryland; Holness leased an apartment and fraudulently claimed that Serika and his two children lived there. Holness said that while on the New Jersey Turnpike, the two stopped at a rest stop. After refueling the vehicle, Holness said he needed to urinate. Holness decided not to go inside the rest stop to use the rest room. Instead, Holness said he decided to urinate at night between two tractor trailer trucks parked in the parking lot.  The elaborate tale continued: Holness said that after he urinated between the tractor trailers, a masked man, dressed in all black with a ski mask, in June, jumped into Holness's car. Holness said the masked man identified himself as an Iraqi War veteran, who hates women. Holness had to make the story even better: the Iraqi War veteran, who hates women, also (according to Holness) had a voice modulator that disguised and slowed down his voice. Originally, Holness said that he could only see the whites of the war vet's eyes and could not tell whether the Iraqi War veteran was a man or woman.

According to Holness, the voice-modulator-using, Iraqi war veteran, gender unknown, had Holness drive southbound on the New Jersey Turnpike and enter Maryland. Holness was driving and told police that he (Holness) decided to drive Route 301 in order to avoid tolls and beat the traffic -- Holness's own words. Holness then stated that the Iraqi war vet, who hates women, directed him to a secluded area in Crumpton, Maryland. He/she had Holness and Serika get out of the vehicle. Using duct tape from the Iraqi war vet's bag, he/she began duct-taping Holness's hands. The Iraqi vet left a gun on the car as he duct-taped Holness. Holness says that Serika then tried to run away and the Iraqi vet gave chase, again leaving the gun. Holness stated he heard Serika yell, "He's cutting me, he's cutting me." Holness wanted to help, but he claims that the Iraqi war vet kicked Holness in the head, forcing him to black out for several hours. By the time Holness woke up, he claimed he did not know what had happened to his wife. The evidence proved that Holness's tale was ludicrous and unbelievable on its face. Indeed, Holness told multiple stories to multiple people, as the evidence and witnesses established. Moreover, in recorded jail calls, Holness admitted to having a knife in his car. Contrary to his story, a K-9 tracked Holness's scent away from the murder scene to a nearby river, where Holness discarded the knife.

Phone records and other witnesses established that Holness was trying to divorce his wife to be with other girlfriends. Finally, DNA and other evidence and witnesses contradict Holness's story and confirmed that he participated in the murder of his wife. Holness also wrote a detailed confession letter -- in his own handwriting -- while incarcerated by state authorities. The confession letter contains details that only the true murderer would know, some details that were never revealed publicly or in any discovery. During his incarceration, Holness also asked

individuals and family members to lie for him and obstruct the overall investigation. Holness was also caught with another weapon, again a knife, in his jail cell.

Petitioner has now filed, pro-se, a Motion for Compassionate Release under 18 U.S.C. § 3582(c)(1)(A)(i), arguing that the COVID-19 virus has created a danger to his health and well-being in a prison environment. Holness has served slightly more than ten years on a life sentence. He claims he has been rehabilitated and deserves release because he is not a danger to the community. Holness is forty years of age and has been fully vaccinated. He has no significant medical issues. His hyperlipidemia is controlled through medication. His is a danger to the community who should serve his full sentence. Judge Nickerson, in imposing the life sentence, was aware of the advisory nature of the Sentencing Guidelines, and he imposed that sentence recognizing not only the brutality of the murder, but the premeditation involved, the financial motive, and the substantial attempts to obstruct justice. Holness has no projected release date.

## I. LEGAL FRAMEWORK

**Court's authority to adjudicate motions for compassionate release.**

Under 18 U.S.C. § 3582(b), the district court has only limited authority to modify a final sentence. *Dillon v. United States*, 560 U.S. 817, 824-25 (2010) (noting that under Section 3582, the Court generally "may not modify a term of imprisonment once it has been imposed"); *United States v. Goodwyn*, 596 F.3d 233, 235 (4th Cir. 2010) ("The law closely guards the finality of criminal sentences against judicial change of heart") (internal quotation omitted); *United States v. Brown*, RDB-16-553, at 2 (D. Md. Mar. 26, 2020) (holding that the Court "may not modify the sentence imposed . . . unless certain limited circumstances arise or as permitted under Rule 35 of

the Federal Rules of Criminal Procedure and 18 U.S.C. § 3582(c)"). Section 3582(c)(1)(A)(i), commonly termed the "compassionate release" provision, provides one such exception by permitting courts to reduce a previously imposed term of imprisonment upon finding that "extraordinary and compelling reasons" exist for doing so, consistent with the applicable policy statements of the Sentencing Commission.

**A. Grounds for compassionate release.**

After exhaustion of administrative remedies, the statute establishes a two-step inquiry:

> **First**: The Court must determine if an inmate is eligible[1] for a sentence reduction that is: (A) warranted by "extraordinary and compelling reasons;" and (B) consistent with applicable Sentencing Commission Policy Statements.
>
> **Second**: If the Court finds inmate is eligible for compassionate release, it must then consider whether a sentence reduction is warranted according to the factors set forth in 18 U.S.C. § 3553(a).

*See* 18 U.S.C. § 3582(c)(1)(A); *see also Dillon*, 560 U.S. at 826-27 (holding that parallel language in Section 3582(c)(2) establishes a similar two-step inquiry)).

The burden is on the inmate to demonstrate that he has exhausted administrative remedies and that there are extraordinary and compelling reasons to reduce his sentence. 18 U.S.C. § 3582(c)(1)(A); *United States v. Greenhut*, 2020 WL 509385, at *1 (C.D. Cal. Jan. 31, 2020); *United States v. Hamilton*, 715 F.3d 328, 337 (11th Cir. 2013) (holding that an inmate, "as the § 3582(c)(2) movant, bears the burden of establishing" eligibility). Even for those inmates who are statutorily eligible for a reduced sentence, compassionate release is a "rare" and "extraordinary" remedy. *United States v. Chambliss*, 948 F.3d 691, 693-94 (5th Cir. 2020); *White v. United States*,

---

[1] Certain defendants at least 70 years old are eligible for sentence reductions, a provision not applicable in the instant case. *See* 18 U.S.C. § 3582(c)(1)(A)(ii)

378 F. Supp. 3d 784, 787 (W.D. Mo. 2019) (holding that "a compassionate release . . . is an extraordinary and rare event."); *United States v. Mangarella*, 2020 WL 1291835, at *2-3 (W.D.N.C. Mar. 16, 2020).

**B. 18 U.S.C. § 3582(c)(1)(A)(i).**

The compassionate release provision of § 3582(c)(1)(A), adopted as part of the Sentencing Reform Act of 1984, originally permitted judicial relief only upon a motion by the Director of the Bureau of Prisons ("BOP"). Previously, a defendant could only petition the BOP Director for compassionate release, who could then move the district court for compassionate release. *United States v. Webster*, 2020 WL 618828, at *1 (E.D. Va. Feb. 10, 2020) (citing U.S. Sentencing Guidelines Manual § 1B1.13 cmt. n. 4 (U.S. Sentencing Comm'n 2018)).

On December 21, 2018, however, Congress passed the First Step Act, Pub. L. No. 115-391, 132 Stat. 5194. Section 603(b) of that Act amended § 3582(c)(1)(A) to allow defendants, in specified circumstances, to file motions for compassionate release directly with the court of conviction. *See* First Step Act, § 603(b). Section 3582(c)(1)(A), as amended by the First Step Act, provides in relevant part:

> (c) Modification of an imposed term of imprisonment. — The court may not modify a term of imprisonment once it has been imposed except that —
>
> (1) in any case.—
>
> (A) the court, upon motion of the Director of the Bureau of Prisons, or upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier, may reduce the term of imprisonment (and may impose a term of probation or supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment), after considering the factors set forth in section 3553(a) to the extent that they are applicable, if it finds that—

> (i) extraordinary and compelling reasons warrant such a reduction;
>
> . . .
>
> and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission . . . .

18 U.S.C. § 3582(c)(1)(A).

As was the case prior to enactment of the First Step Act, § 3582(c)(1)(A) permits compassionate release based on "extraordinary and compelling reasons." *Id*. The Sentencing Commission "shall describe what should be considered extraordinary and compelling reasons for sentence reduction, including the criteria to be applied and a list of specific examples. Rehabilitation of the defendant alone shall not be considered an extraordinary and compelling reason." 28 U.S.C. § 994(t).

In other words, once the inmate satisfies the statute's exhaustion requirement, the Court may reduce the inmate's sentence, but only if it finds that the inmate is eligible for compassionate release — that is "extraordinary and compelling reasons warrant such a reduction," and that a sentence reduction is consistent with applicable policy statements, including, as discussed below, that the inmate is no longer a danger to the community. *See Dillon*, 560 U.S. at 826-27 (holding that Section 3582(c) permits a sentencing reduction only when that reduction would be "consistent with applicable policy statements issued by the Sentencing Commission") (citing U.S.S.G. § 1B1.10 (policy statement for Section 3582(c)(2) sentencing reductions)).

**C. U.S.S.G. § 1B1.13 Policy Statement**

Because § 3582(c)(1)(A) permits a sentencing reduction only where "such a reduction is consistent with the applicable policy statements issued by the Sentencing Commission," the pertinent policy statement, found at U.S.S.G. § 1B1.13, is binding on the Court. 18 U.S.C. §

3582(c)(1)(A); *see also Dillon*, 560 U.S. at 827 (Because § 3582(c)(2) only permits sentence reductions "if such a reduction is consistent with applicable policy statements issued by the Sentencing Commission," the applicable policy statement is binding).

The Sentencing Commission Policy Statement implementing 18 U.S.C. § 3582(c)(1)(A) states that the Court may reduce a term of imprisonment if it determines that, in relevant part, the requested reduction of the defendant's sentence meets each of three criteria:

> (1) extraordinary and compelling reasons warrant the reduction;
>
> (2) the defendant is not a danger to the safety of any other person or to the community, as provided in 18 U.S.C. § 3142(g); and,
>
> (3) the reduction is consistent with this policy statement.

U.S.S.G. § 1B1.13.

"[T]he Sentencing Commission is responsible for defining what should be considered extraordinary and compelling reasons for sentence reduction under § 3582(c)(1)(A)." *United States v. Hiller*, ELH-18-389, 2020 WL 2041673 at *3 (D. Md. April 28, 2020) (citing 28 U.S.C. § 994(t)) (further citation and internal quotation marks omitted). The Commission's Policy Statement, Application Note 1 of § 1B1.13, defines "extraordinary and compelling reasons" as follows:

> 1. Extraordinary and Compelling Reasons.—Provided the defendant meets the requirements of subdivision (2),[2] extraordinary and compelling reasons exist under any of the circumstances set forth below:
>
> (A) Medical Condition of the Defendant.—
>
> (i) The defendant is suffering from a terminal illness (i.e., a serious and advanced illness with an end of life trajectory). A specific prognosis of life expectancy (i.e., a probability of death within a specific time period) is not required. Examples include

[2] As discussed above, subsection (2) of § 1B1.13 requires that "the defendant is not a danger to the safety of any other person or to the community, as provided in 18 U.S.C. § 3142(g)." U.S.S.G. § 1B1.13(2).

metastatic solid-tumor cancer, amyotrophic lateral sclerosis (ALS), end-stage organ disease, and advanced dementia.

(ii) The defendant is—

(I) suffering from a serious physical or medical condition,

(II) suffering from a serious functional or cognitive impairment, or

(III) experiencing deteriorating physical or mental health because of the aging process,

that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover.

(B) Age of Defendant.— The defendant (i) is at least 65 years old; (ii) is experiencing a serious deterioration in physical or mental health because of the aging process; and (iii) has served at least 10 years or 75 percent of his or her term of imprisonment, whichever is less.

(C) Family Circumstances.—

(i) The death or incapacitation of the caregiver of the defendant's minor child or minor children.

(ii) The incapacitation of the defendant's spouse or registered partner when the defendant would be the only available caregiver for the spouse or registered partner.

(D) Other Reasons.— As determined by the Bureau of Prisons, there exists in the defendant's case an extraordinary or compelling reason other than, or in combination with, the reasons described in subdivisions (A) through (C).

U.S.S.G. § 1B1.13 app. note 1.

Additionally, pursuant to the mandate in § 994(t), Application Note 3 states: "rehabilitation of the defendant is not, by itself, an extraordinary and compelling reason for purposes of this policy statement." U.S.S.G. § 1B1.13 app. note 3. In this case, Holness has served approximately ten years of a life sentence for the brutal stabbing death of his wife. Petitioner's conduct in prison is largely irrelevant herein given the heinous nature of the criminal conduct. The public needs to be protected from him.

As discussed above, it is the government's position that the Commission's Policy Statement is binding on the courts. The Government recognizes that in the recent decision in *United States v. McCoy*, 981 F.3d 271 (4th Cir. 2020), the Fourth Circuit held that there is no "applicable" policy statement governing compassionate-release motions filed by defendants under § 3582(c)(1)(A), as modified by the First Step Act. Accordingly, district courts can "consider *any* extraordinary and compelling reason for release that a defendant might raise." *Id*. (quoting *United States v. Zullo*, 976 F.3d 228, 230 (2020) (emphasis in original)). The Fourth Circuit also held that "Other Reasons" category at Application Note 1(D) is not limited to other reasons identified by BOP. The Government acknowledges that the mandate issued on January 22, 2021, thus the holding in *McCoy* is controlling for this Court on this issue. While we do not concede that the case was decided correctly, we note our objections for purposes of any subsequent appeal in this case or others, and in any event, the *McCoy* decision would be stretched beyond any reasonable bounds to use it as a basis to grant this Petitioner's request.

**Holness is fully vaccinated**, so his claim of being at risk because of COVID-19 in significantly diminished. He is forty years old and **has no qualifying medical conditions**. He simply wants this Court to fashion judicial clemency to afford him a sentence reduction. Judge Nickerson got this right, and Petitioner clearly deserves a life sentence.

Judge Nickerson, in imposing the life sentence, was aware of the advisory nature of the Sentencing Guidelines, and he imposed that sentence recognizing not only the brutality of the murder, but the premeditation involved, the financial motive, and the substantial attempts to obstruct justice. Holness is a dangerous, manipulative and cunning person who must serve his full sentence so that the public is protected from him.

**D. BOP Program Statement 5050.50**

The policy statement in § 1B1.13 is not the only source of criteria the Court may apply in determining whether "extraordinary and compelling reasons" exist to justify a reduction. As detailed above, Application Note 1(D) permits the court to reduce a sentence where, "[a]s determined by the Director of the Bureau of Prisons, there exists in the defendant's case an extraordinary and compelling reason other than, or in combination with, the reasons described in subdivisions (A) through (C)." U.S.S.G. § 1B1.13 app. note 1(D) (emphasis added). Pursuant to this power, the BOP has issued a policy statement outlining the circumstances that it will permit a compassionate release request. This BOP regulation appears at Bureau of Prisons Program Statement 5050.50, Compassionate Release/Reduction in Sentence: Procedures for Implementation of 18 U.S.C. §§ 3582 and 4205. Notably, both the Guideline policy statement in § 1B1.13 and BOP Program Statement 5050.50 limit "extraordinary and compelling reasons" for compassionate release to circumstances involving illness, declining health, age, or exceptional family circumstances. Holness meets none of these criteria.

While Program Statement 5050.50 contains standards that are both more extensive than, and slightly different from, those set forth under § 1B1.13(1)(A) of the policy statement, BOP's program statement and determination regarding Petitioner's eligibility for relief is nonetheless entitled to appropriate deference. *See Reno v. Koray*, 515 U.S. 50, 61 (1995) (BOP program statements, which do not require notice and comment, are entitled to "some deference" where they reflect a "permissible construction of the statute") (internal quotation marks omitted). However, to the extent that the program statement and the policy statement conflict, it is the Sentencing Commission's policy statement – the source directly authorized by statute – that is binding.

Establishing the criteria in Program Statement 5050.50 and Application Note 1 to § 1B1.13 is just the first step of a multi-step inquiry that ultimately results in the court weighing the factors

set forth in 18 U.S.C. § 3553(a) to determine if the "rare" and "extraordinary" remedy of compassionate release is appropriate. *See Chambliss*, 948 F.3d at 693-94; *White*, 378 F. Supp. 3d at 787; *Mangarella*, 2020 WL 1291835, at *2-3.

**E. Consideration of the § 3553(a) sentencing factors.**

If the Court determines that the inmate is eligible for a sentencing reduction, the Court must then consider whether an exercise of its discretion to reduce the inmate's sentence is warranted according to the factors set forth in Section 3553(a) factors and determine whether to exercise its discretion to reduce the inmate's sentence. *Dillon,* 560 U.S. at 827, 18 U.S.C. § 3582(c)(1)(A).

Section 3553(a) provides that "[t]he court shall impose a sentence sufficient, but not greater than necessary," to comply with the purposes described in § 3553(a)(2):

> (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;
>
> (B) to afford adequate deterrence to criminal conduct;
>
> (C) to protect the public from further crimes of the defendant; and
>
> (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner.

18 U.S.C. § 3553(a)(2)(A)-(D). In imposing the sentence, the court shall consider *inter alia* "the nature and circumstances of the offense and the history and characteristics of the defendant." 18 U.S.C. § 3553(a)(1).

**F. BOP Response to COVID-19.**

Petitioner has been fully vaccinated.

**ANALYSIS**

On the merits, the government respectfully submits that the Court should deny Petitioner's

motion for lack of compelling "extraordinary and compelling reasons" sufficient to support a reduction of his sentence. Petitioner bears the burden of establishing that a sentence reduction is warranted. *United States v. Mattingley*, 2020 WL 974874, at *3 (W.D. Va. Feb. 28, 2020) ("the party trying to change the status quo" has the "burden to prove that he is entitled to a reduction of sentence under § 3582(c)(1)"); *United States v. Edwards*, 2020 WL 1650406, at *3 (W.D. Va. Apr. 2, 2020) ("A defendant who seeks compassionate release under § 3582(c)(1)(A)(i) has the burden of establishing that such relief is warranted"). For the reasons that follow, Petitioner's request for compassionate release should be denied.

**A. Petitioner should not have his sentence reduced as a result of his fear of catching COVID and for his alleged rehabilitation.**

Holness is young and healthy, with no medical vulnerabilities. He has been fully vaccinated.

According to the CDC, those who "are more likely to become severely ill from COVID-19" are those who are:

- Pregnant

On the other hand, the following conditions "can make you more likely to get severely ill from COVID-19:"

- Cancer
- Chronic kidney disease
- Chronic lung disease (including COPD, moderate-to-severe asthma, interstitial ling disease, cystic fibrosis and pulmonary hypertension)
- Dementia
- Down Syndrome
- HIV infection
- Heart conditions, such as heart failure, coronary artery disease, "possibly" hypertension, or cardiomyopathies
- Immunocompromised state (weakened immune system)(list of conditions provided)
- Solid organ or blood stem cell transplant

- Being overweight and Obesity (Body Mass Index [BMI] >25 but <30kg/m2 for overweight; BMI >30 but <40kg/m2 for obesity, and BMI >40 for severe obesity.)
- Sickle cell disease and thalassemia
- Stroke or cerebrovascular disease, affecting blood flow to the brain
- Smoking, current or former
- Type 1 and Type 2 diabetes
- Substance use disorders, such as alcohol, opioid and cocaine disorder

https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html [hereinafter "CDC Risk Factors"].  Accordingly, the government recognizes that inmates with the listed conditions have established threshold eligibility for compassionate release. Petitioner is not one of them.

The CDC Guidelines also address the risk factors as they relate to the age of the person involved.  https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/older-adults.html. "For example, people in their 50s are at higher risk for severe illness than people in their 40s. Similarly, people in their 60s or 70s are, in general, at higher risk for severe illness than people in their 50s. The greatest risk for severe illness from COVID-19 is among those aged 85 or older." *Id.*  Petitioner is 30 years old, and not at risk as others due to his age.

**The factors set forth in 18 U.S.C. § 3553(a) further support a denial of the requested reduction.**

Petitioner's motion should also be denied after consideration of the factors set forth in 18 U.S.C. § 3553(a).  Section 3553(a) provides that "[t]he court shall impose a sentence sufficient, but not greater than necessary," to comply with the purposes described in § 3553(a)(2):

(A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;

(B) to afford adequate deterrence to criminal conduct;

(C) to protect the public from further crimes of the defendant; and

(D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner.

18 U.S.C. § 3553(a)(2)(A)-(D). In imposing the sentence, the court shall consider *inter alia* "the nature and circumstances of the offense and the history and characteristics of the defendant." 18 U.S.C. § 3553(a)(1).[3]

Here, the seriousness of the instant offenses weighs heavily against reducing Petitioner's sentence. Holness planned for his wife's death well in advance of her brutal death at his hands. He took out a million-dollar insurance policy, then planned her death. He took her to a secluded location on the Eastern Shore of Maryland at brutally stabbed her to death. He discarded the murder weapon and took many steps to conceal his crime. He lied to investigators repeatedly, tried to influence and intimidate witnesses, and was rightly convicted by a jury after a multi-week trial. Judge Nickerson, in imposing the life sentence, was aware of the advisory nature of the Sentencing Guidelines, and he imposed that sentence recognizing not only the brutality of the murder, but the premeditation involved, the financial motive, and the substantial attempts to obstruct justice. Holness is a dangerous, manipulative and cunning person who must serve his full sentence so that the public is protected from him.

A sentence must, *inter alia*, reflect the seriousness of the offense, promote respect for the law, provide just punishment for the offense, afford adequate deterrence to criminal conduct, and protect the public from further crimes. 18 U.S.C. § 3553(a)(2). The facts above support the government's position that Petitioner's life sentence was, and remains, the correct sentence pursuant to the factors set forth in 18 U.S.C. § 3553(a), and thus should remain undisturbed. This Court should not rethink the sentencing court's decision. Judge Nickerson got this sentence

---

[3] Additionally, the Court may consider an eligible defendant's post-sentencing conduct in determining whether relief is appropriate. *See Pepper v. United States*, 562 U.S. 476 (2011).

correct…..and deserves every minute of the sentence. *See Goodwyn*, 596 F.3d at 235 ("The law closely guards the finality of criminal sentences against judicial change of heart").

Accordingly, for all the reasons discussed herein, this Court should find that Petitioner is ineligible for a sentence reduction, or that alternatively, it is unwarranted under the § 3553(a) factors. *See*, *e.g.*, *United States v. Gallman*, PWG-14-292, 2020 WL 3412995 (D. Md. June 22, 2020) (finding that inmate remained an economic danger to the community and denying compassionate release to tax protestor who had "immunocompromised status due to a kidney transplant" that placed "him at heightened risk for severe complications if he were to contract the disease"); *United States v. Barringer*, 2020 WL 2557035, at *7-9 (denying compassionate release for 60 year old white-collar inmate who suffers from "hypertension, diabetes, a chronic kidney disease, and extreme obesity (over 400 pounds)," and who had served 50 percent of his sentence); "Simply put, the coronavirus is not tantamount to a 'get out of jail free' card." *See Hiller*, 2020 WL 2041673, at *4.

## **CONCLUSION**

Based upon the foregoing, Petitioner's request should be denied because he has not shown an "extraordinary and compelling reason" for compassionate release, nor is release merited under the factors set forth in 18 U.S.C. § 3553(a).

Respectfully submitted,

Jonathan F. Lenzner
Acting United States Attorney

By: __________/s/______________
James G. Warwick
Assistant United States Attorney

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on August 25, 2021, a copy of the foregoing Government's Response was delivered was filed via ECF and sent regular mail to Ryan Holness, Register Number 44514-037, FCI Allenwood-Medium, P.O. Box 2000, White Deer, PA 17887.

By: __________/s/____________________
James G. Warwick
Assistant United States Attorney